## J. H. LYNCH v. TEXAS & PACIFIC RAILWAY COMPANY.

Decided December 8, 1910.

#### Negligence—Master and Servant—Scope of Employment—Charge.

Evidence considered in case of a hostler whose duty it was to receive the engine of an incoming train when stopped and detached and to take same to roundhouse, and who, climbing on the side of one of the cars before the train stopped, was struck by a car left too close upon an adjoining track,—the proof being held to present a question of fact as to the right to recover, and not to warrant a peremptory instruction for defendant.

Appeal from the District Court of Bowie County. Tried below before Hon. P. A. Turner.

*J. M. Terrell,* for appellant, cited: Harvey v. Railway Co., 166 Fed., 385; Brandon v. Railway Co., 113 S. W., 968; Dailey v. Railway Co., 167 Fed., 592; Gulf, C. & S. F. Ry. Co. v. Gasscamp, 69 Texas, 545; Galveston, H. & S. A. Ry. Co. v. Smith, 76 Texas, 611; St. Louis S. W. Ry. Co. v. Niblack, 53 Texas Civ. App., 619; Missouri, K. & T. Ry. Co. v. Jones, 117 S. W., 1000; Galveston, H. & S. A. Ry. Co. v. Brown, 33 Texas Civ. App., 589; Gulf, C. & S. F. Ry. Co. v. Danshank, 6 Texas Civ. App., 385; Thompson on Neg., secs. 4269, 4270, 5074, 5730, 5404; Shipper's Comp. Co. v. Davidson, 35 Texas Civ. App., 558; Fort Worth & D. C. Ry. Co. v. Smith, 39 Texas Civ. App., 92; St. Louis S. W. Ry. Co. v. Holt, 57 Texas Civ. App., 19; St. Louis S. W. Ry. Co. v. Spivey, 76 Texas, 143; R. L. & P. Ry. Co. v. Thompson, 91 S. W., 339; El Paso & S. W. Ry. Co. v. Darr, 93 S. W., 166; Beaumont Trac. Co. v. Dellworth, 94 S. W., 352; Missouri, K. & T. Ry. Co. v. Parrott, 43 Texas Civ. App., 325; Galveston, H. & S. A. Ry. Co. v. Cherry, 44 Texas Civ. App., 344; Adams v. Railway Co., 105 S. W., 526; Wallace v. Cotton Oil Co., 91 Texas, 18; Guance v. Railway Co., 20 Texas Civ. App., 33; Bowman v. Brewing Co., 17 Texas Civ. App., 446.

*Glass, Estes, King & Burford,* for appellee, cited:  St. Louis S. W. Ry. Co. v. Spivey, 97 Texas, 143.

LEVY, ASSOCIATE JUSTICE.—The suit is to recover damages for personal injuries caused by alleged negligence of the railway company, and the court peremptorily instructed a verdict for appellee. The petition alleges, and it was substantially shown, that appellant was in the employ of the appellee and doing the duties of a hostler, which was to watch for the arrival of engines in the yards and be at the place where the engines would stop, and after they were disconnected from the train to take charge and control of them and operate them to the turntable and roundhouse. It was also his duty to spot or place engines. At the time of his injury a freight train came into the yard from the southwest, and it was a long and heavy train consisting of many cars, and in passing him appellant hurried and caught hold of the ladder, or steps, on the side of one of the cars and began to climb toward the top of the car for the purpose of getting on the car and walking over the train to the engine so as to be on the engine when it stopped and to take charge of it and carry it to the turntable and roundhouse. While climbing at the side of the car he was suddenly pressed violently against a box car standing on an adjacent cut-off track, which only cleared six or eight inches, was crushed between the cars, knocked to the ground, and received severe and permanent injuries. It was alleged that the appellant did not know the box car was on the particular cut-off track, that it was dark and he could not see the box car, and that to ride on the car as he did was in accordance with the usual and customary manner of hostlers in this yard. The negligence is laid on placing and leaving the box car standing on the cut-off track with its end so near the adjacent track as to clear only six or eight inches.

*After stating the case.*—It was the undisputed proof that appellant's service and duty was to take engines in and out of the roundhouse. He took charge and control of incoming engines in the yard when the "high ball man" cut them loose from the cars. His connection with the particular train, therefore, it seems, commenced when it reached a final standstill in the yard. It would seem, therefore, when tested by the actual duties of his service, that by his act in riding on the side of a box car he had put himself in a position and place where it was not necessary or proper that he should have been in the performance of his duties. And if he were riding for his convenience, and not in the necessary or proper discharge of his duties, the injury received, it would seem, did not arise out of any act or at the place of his usual employment. The cars were not furnished as an instrumentality to facilitate the performance of his duties. It may be said as a general statement of the doctrine, that if a servant voluntarily and without any necessity growing out of his work, and merely for his own convenience, steps outside the line of his duty and goes into a position or some place where it is not necessary or proper that he should be either in going

to or returning from his service, he thereby suspends the relation of master and servant as between his master and himself. But it would not follow in this case that appellant, because his injury occurred while he was in departure from his actual place of work, would be classed as a trespasser and his rights determined as such. Appellant was rightfully in the yard, and his duties called him there. There is evidence that hostlers sometimes employed the act of riding on the cars as a means of traversing the yard to the point where they took charge and control of the incoming engines, and that the master mechanic in charge knew of the fact, though he reprimanded for the act. It was not prohibited by any rule, as appears in the record. Appellant's rights, therefore, must be tested by the principles which would govern as between the company and licensees, because the company knew hostlers sometimes used the act in question to traverse the yard in doing the work. In passing on a demurrer the Supreme Court, in the case of St. Louis S. W. Ry. Co. v. Spivey, 97 Texas, 143, 76 S. W., 748, ruled under the facts alleged that the call-boy in the act he was doing had "no higher right than if he had been simply a licensee disconnected from the service of the company." In other words, it was not in the line of the call-boy's service, and the duty he was performing did not call upon him to ride on freight trains, and therefore the relation of master as such and servant did not exist. The facts in the instant case, though, somewhat differ from the above case. Here the hostler was required to be connected with the operation of trains. He was expected, and it was required of him, to take charge and control of incoming engines after they had reached a final stop in the yards; and he was properly performing his service when he went into the yards. And here the box car was casually placed on the cut-off track too near the adjacent track, and was not a permanent fixture. The evidence raises the inference that it was not usual to leave cars standing on this particular cut-off track, and that said track was constructed and used for the purpose of a switch from track to track and for the placing of cars while making up a train. We are not inclined to comment on the evidence, or give it in detail. If the appellant had license to ride on the cars for the purpose of traversing the yard, and was acting at the time of the injury within the license, then the question is presented of whether the acts or omissions complained of were such as imported culpable negligence either on the part of the company or of some servant for whose defaults it is responsible. If so, then the case was for the jury to decide under proper instructions. The box car was not a part of the permanent structure of the track, nor an appurtenance. As stated, the inference from the evidence is that it was casually placed there, and was not a usual or ordinary condition of the premises. We are not prepared from the record to say when this car was placed in the position it was. It might have been there some time, or it might have been there after the appellant got on the moving train. It is true that a licensee takes the premises as he finds them, but this applies to the ordinary and usual dangers incident to the situation and use of the

premises. There are many instances of special negligence to licensees that entitles them to recover, and it is unnecessary to cite them. As to whether there is special negligence in a case is primarily for the jury. If the evidence raises the issue, and we think it does in the record before us, as to whether by some special negligence the premises were made more dangerous after the license was granted, and in such a way that the new and increased danger relied on was not open to the observation of appellant, then the jury should have decided the question, and it was error to give a peremptory instruction. We are not to be understood as prejudging the facts, we are speaking strictly to the present record as we interpret it, and the facts here, if applied by either side on another trial, will be considered anew on that state of proof.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*